UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA L. CROSBY, | ) |
| | ) No. CV-09-231-JPH |
| Plaintiff, | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on July 9, 2010 (Ct. Rec. 14, 19). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Franco Becia represents the Commissioner of Social Security (Commissioner). The parties have consented to proceed before a magistrate judge (Ct. Rec. 7). On June 30, 2010, plaintiff filed a reply (Ct. Rec. 22). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 19) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 14).

**JURISDICTION**

Plaintiff applied for disability insurance benefits (DIB) on November 14, 2005, alleging onset as of February 1, 2001, due to depression and anxiety (Tr. 106). The application was denied

- 1 -

initially and on reconsideration (Tr. 69-71, 74-75). At a hearing
before Administrative Law Judge (ALJ) Paul Gaughen on June 29,
2008, plaintiff, represented by counsel, plaintiff's spouse,
Stephen Crosby, and vocational expert Sharon Welter testified (Tr.
3-29). On May 23, 2008, the ALJ issued an unfavorable decision
(Tr. 36-56). The Appeals Council denied review on July 13, 2009
(Tr. 30-33). Therefore, the ALJ's decision became the final
decision of the Commissioner, which is appealable to the district
court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action
for judicial review pursuant to 42 U.S.C. § 405(g) on July 29,
2009 (Ct. Rec. 1,4.)

<strong>STATEMENT OF FACTS</strong>

The facts have been presented in the administrative hearing
transcripts, the ALJ's decision, the briefs of the parties, and
are summarized here where relevant.

Plaintiff was 47 years old at onset and 54 at the hearing
(Tr. 21). She graduated from high school, earned an associate's
and bachelor's degree in business and communications, and is 14
credits short of earning an M.A. degree (Tr. 6-7, 296). Ms. Crosby
has worked as a mortgage clerk, administrative clerk, telephone
solicitor, sales service promoter, sales/food products
representative, and program manager (Tr. 20-21, 55-56). She last
worked in February of 2001 (Tr. 7). Plaintiff suffers from
depression and anxiety (Tr. 10, 20, 106, 292, 312, 372). She
experiences anxiety when she has something new to do (Tr. 12), is
unable to shop for groceries alone (Tr. 16); and has problems with
concentration, memory, sleep, and fatigue (Tr. 9, 11, 16, 18-19).
She sees a psychiatrist every six months (Tr. 10). Plaintiff

testified she can sit 30 minutes, stand 10, walk one block, and carry 20 pounds (Tr. 14-15).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment

is severe, the evaluation proceeds to the third step, which
compares plaintiff's impairment with a number of listed
impairments acknowledged by the Commissioner to be so severe as to
preclude substantial gainful activity. 20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P
App. 1. If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.
If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from
performing work which was performed in the past. If a plaintiff is
able to perform previous work, that Plaintiff is deemed not
disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At
this step, plaintiff's residual functional capacity ("RFC")
assessment is considered. If plaintiff cannot perform this work,
the fifth and final step in the process determines whether
plaintiff is able to perform other work in the national economy in
view of plaintiff's residual functional capacity, age, education
and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.
*Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.
Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is
met once plaintiff establishes that a physical or mental
impairment prevents the performance of previous work. The burden
then shifts, at step five, to the Commissioner to show that (1)
plaintiff can perform other substantial gainful activity and (2) a

"significant number of jobs exist in the national economy" which
plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a
Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold
the Commissioner's decision, made through an ALJ, when the
determination is not based on legal error and is supported by
substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th
Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
"The [Commissioner's] determination that a plaintiff is not
disabled will be upheld if the findings of fact are supported by
substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th
Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is
more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112,
1119 n. 10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988). Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted). "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On
review, the Court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner. *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

At the onset ALJ Gaughen found plaintiff was insured through December 31, 2006 (Tr. 41). At step one he found Ms. Crosby has not engaged in substantial gainful activity since onset on February 1, 2001 (Tr. 41). At steps two and three, he found plaintiff suffers from severe musculoskeletal impairment to the right lower extremity due to tibia, fibula and malleolus fractures and status post debridement and fixation surgery, impairments that are severe but which do not meet or medically equal a Listing impairment (Tr. 41, 48). The ALJ found plaintiff less than completely credible (Tr. 50-52). At step four, relying on the VE, ALJ Gaughen found plaintiff is able to perform past relevant work as a mortgage clerk, telephone solicitor, sales service promoter, sales/food products representative, and program manager (Tr. 48,

55). Accordingly, the ALJ found plaintiff is not disabled as defined by the Social Security Act (Tr. 56). The ALJ's step four finding made step five unnecessary.

**ISSUES**

Plaintiff contends the Commissioner erred first by failing to properly weigh the evidence of psychological impairment. Specifically, she alleges the ALJ improperly weighed the opinions of treating psychiatrist David Bot, M.D., and of examining professionals Paul Michels, M.D., and Dennis Pollack, Ph.D., resulting in error at step two (Ct. Rec. 15 at 11-19). Second, plaintiff asserts the ALJ erred by failing to include Dr. Michels's assessed limitations in his questions to the VE at step four (Ct. Rec. 15 at 17-19). The Commissioner responds the ALJ appropriately weighed the evidence, including plaintiff's credibility, and correctly determined her RFC. The Commissioner asks the Court to affirm (Ct. Rec. 20 at 24).

**DISCUSSION**

**A. Weighing medical evidence - standards**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cr.

1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

///

**B. Step two**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cr. 1991).

An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F.3d 683, 686-687 (9th Cir. 2005) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to

find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F.3d at 687; *see also Yuckert*, 841 F.2d at 306.

Ms. Crosby primarily argues the ALJ erred at step two by failing to find depression and anxiety severe impairments. She alleges the ALJ failed to properly credit the following evidence: (1) plaintiff was psychiatrically hospitalized for three days [more than a year before onset], for an attempted prescription drug overdose in June 1999 (Ct. Rec. 15 at 12; Tr. 187, 189, 194); (2) Dr. Bot treated plaintiff for anxiety and depression from before onset on February 1, 2001, through August 6, 2007 (Ct. Rec. 15 at 12-13; 15-17, citing Tr. 241-269, 317, 365, 367-368); (3) Dr. Michels diagnosed depressive disorder NOS [mild] in May 2006 (Ct. Rec. 15 at 12-13; 16, 18-19, citing Tr. 292-299), and 4) in January 2008, Dr. Pollack diagnosed anxiety disorder NOS and dysthymic disorder with resulting marked and moderate limitations in functioning (Ct. Rec. 15 at 14, 17-18; Tr. 375, 377).

*1. Credibility*

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible (Tr. 50, 52). Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

"General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ relied on plaintiff's activities inconsistent with the degree of impairment alleged (Tr. 50, 52). Plaintiff told Dr. Michels she attends about five church meetings a week. In addition, she serves in a door to door ministry lasting 6-9 hours, from three to four days a week (Tr. 297-298). The ALJ notes in March of 2006, Ms. Crosby cared for her nine month old infant grandson all day once a week (Tr. 44, 50, referring to Exhibits 12F and 16F). After onset, plaintiff cared for a garden, shopped, did laundry, cooked, and vacuumed. About a year after onset, she traveled to Florida (Tr. 43-44, 46, 127, 245, 250, 317, 373).

The ALJ relied on evidence plaintiff's claim appears motivated by secondary gain rather than disability (Tr. 52). He observes Ms. Crosby told her treatment provider she does not want to work because it would interfere with church activities, and she enjoys not working (Tr. 52, 242). Significantly, he notes Ms.

Crosby waited until five years after onset before she applied for DIB, at a time when her spouse was reduced to working part time and to receiving retirement benefits (Tr. 52).

This was proper. *See e.g., Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)(leaving job because laid off rather than as a result of injury, and waiting until nine months after lay off to seek medical attention properly relied on as diminishing credibility). Error if any is clearly harmless, however, harmless because the ALJ's other reasons are clear, convincing, and supported by the evidence.

The ALJ relied on plaintiff's inconsistent statements, lack of consistent treatment, and symptoms effectively controlled with medication when he assessed credibility (Tr. 52). The ALJ compared plaintiff's testimony she does not shop alone (Tr. 16) with her statement to Dr. Michels she does all the household shopping (Tr. 52, referring to Tr. 297). Similarly, the ALJ notes plaintiff testified she rarely does household chores but told health care providers she was capable of and did chores (Tr. 52; Tr. 297; 373). Most significantly, the ALJ notes plaintiff's statements she sometimes spends all day in bed due to depression have not been reported to her treatment providers.

The ALJ notes plaintiff's mental health treatment for allegedly severe limitations has been "only periodic and intermittent," generally at six month intervals but at times with longer gaps. The ALJ points out plaintiff only saw Dr. Bot four times between September 2004 and the hearing on November 22, 2006 (Tr. 51). ALJ Gaughen relied on primary care physician Allan Seely, M.D.'s July 2002 (more than a year after onset) and April

2003 opinions plaintiff's depression was well controlled with medication (Tr. 44, 51, referring to Exhibit 2F; Tr. 216, 221).

Inconsistent statements, inconsistencies between statements and conduct, and extent of daily activities diminish credibility. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002). An "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can cast doubt on a claimant's sincerity. *Fair v. Bowen*, 885 F.2d 597,603 (9th Cir. 1989). Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), *cert. denied*, 552 U.S. 1141 (2008), *citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (1995). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's reasons for finding plaintiff less than fully credible are clear, convincing, and supported by substantial evidence.

*2. Treating psychiatrist*

ALJ Gaughen considered the contradicted opinions of Dr. Bot, plaintiff's treating psychiatrist before and after onset (Tr. 42, Exhibits 1F, 4F). Before onset, the ALJ notes Dr. Bot's records indicate plaintiff's anxiety and depression were likely exacerbated by relationship problems with her [former] spouse (Tr. 42). The evidence includes a break-in by her estranged spouse in December 1999 (Tr. 259), violations of restraining orders in January of 2000 (Tr. 258), and financial stress including

bankruptcy filing ( Tr. 255, 260). The ALJ points out throughout the record, Dr. Bot treated plaintiff only intermittently. Before onset, plaintiff saw Dr. Bot in 1997 but did not return until May 1999 (Tr. 187).

Three months after onset, in May 2001, Dr. Bot notes plaintiff is happy to be laid off work. Finances are not a problem due to an inheritance and unemployment. Plaintiff "witnesses" door to door for her church 70 hours a month. Recently she became engaged (Tr. 43; 254; Exhibit 4F).

Plaintiff returned to Dr. Bot five months later, in November of 2001. She felt better with a medication change and depression was milder overall. She was not working because her [current] spouse "told her she did not have to" (Tr. 43, 253). In January 2002, Dr. Bot again notes plaintiff enjoys not working (Tr. 43, 252).

Ms. Crosby saw Dr. Bot in October 2002. She returned eight months later, in June 2003. There is a nine month gap in treatment Between September 2004 and June 2005 (Tr. 43). In June 2005, plaintiff says she does not need to work. If she became employed, it would mean giving up some service to the church, a result she does not want (Tr. 43; Exhibit 4F). Plaintiff's last appointments with Dr. Bot were in October 2005, June 2006, and June 2007 (Tr. 241, 317, 365).
(Tr. 42-43; Exhibit 1F).

In October 2005 plaintiff performs service for her church three days a week from 5 am to 1 pm. She declines trying a new psychotropic drug. Medications are adjusted. On October 26, 2005, her mood and energy are better (Tr. 241).

In June 2006, plaintiff only occasionally takes anxiety medication; she "does not feel bad." Ms. Crosby witnesses for her church three days a week (Monday, Wednesday, and Friday) and cares for her grandson on Tuesdays, both activities she enjoys (Tr. 317). A year later, in June 2007, plaintiff has the same four day schedule. In addition, she attends five Bible study groups a week. Dr. Bot diagnoses mild depression and schedules a yearly medication check (Tr. 365).

Surprisingly, Dr. Bot assessed several moderate limitations. This is inconsistent with his own treatment notes indicating plaintiff is busy, content, and does not wish to work. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). The limitations are also inconsistent with Dr. Bot's diagnosis of mild depression (Tr. 365).

The ALJ found Ms. Crosby's activities are inconsistent with Dr. Bot's assessed moderate impairment in the ability to maintain attention and concentration for extended periods (Tr. 367). As noted, plaintiff appears to maintain attention and concentration at least four days a week. She regularly attends study groups with no reported difficulty. Tests reveal no impairment in these areas. Similarly, these activities are inconsistent with Dr. Bot's assessed moderate limitations in the ability to perform activities within a schedule, and with assessed mild to moderate limitations in the ability to complete a normal work day and perform at a consistent pace (Tr. 367). The ALJ's reason is specific and legitimate. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ notes plaintiff only sought treatment with Dr. Bot

infrequently, another reason undermining Dr. Bot's opinion Ms. Crosby suffers more than mild limitations. *See Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Dr. Bot opined plaintiff is moderately limited in the ability to respond appropriately to changes in the workplace (Tr. 368). The ALJ modified Dr. Bot's assessed limitation and opined plaintiff is mildly or slightly limited in the capacity to adapt to change (Tr. 22).

*3. Examining psychiatrist*

The ALJ considered the contradicted May 2006 opinion of examining psychiatrist Dr. Michels (Tr. 53, referring to Tr. 292-299) and found his assessed GAf of 65-70, indicating mild impairment, was consistent with the bulk of the record (Tr. 53). The ALJ observes the claimant

> was adamant that her conditions were not severe enough to cause her to see Dr. Bot more than her established twice a year visits and that overall she was doing fairly well. Claimant reported to Dr. Michels that she slept 6-7 hours a night and would occasionally nap but made no indication that she was incapable of getting out of bed on a regular basis due to her depressive symptoms. The undersigned agrees with Dr. Michels' conclusion that the claimant's reported depressive symptoms were inconsistent with her repeatedly reported day to day activities.

(Tr. 53; Exhibit 7F; Tr. 299).

The ALJ refers to plaintiff's reports she sometimes stays in bed and does not eat or shower for days (Tr. 146), as noted a report she has not made to health care providers (Tr. 53).

*4. Examining psychologist*

ALJ Gaughen considered the contradicted opinion of examining psychologist Dr. Pollack, who examined plaintiff almost two years

after Ms. Crosby's last insured date (Tr. 54; 370-379). Dr. Pollack assessed plaintiff as markedly limited in the ability to complete a normal workday or workweek and moderately limited in the ability to perform within a schedule (Tr. 377). He notes Ms. Crosby's test scores are lower than expected for someone with a college degree and her work history (Tr. 375). The ALJ rejects this assessment because it is unsupported by Dr. Pollack's (and Dr. Michels's) testing. Dr. Pollack's assessed GAF of 60 is "one point from being classified as a mild impairment," similar to Dr. Michels's assessed GAF of 65-70 indicating only mild impairment. And the ALJ notes Dr. Pollack fails to indicate when the assessed limitations began or will end. The ALJ's reason is highly relevant because Dr. Pollack examined plaintiff almost two years after her last insured date.

To the extent the ALJ rejected the contradicted opinions of some of the professionals, his reasons are legitimate, specific, and supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)(the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating or examining physician's contradicted opinion).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result

upon de novo review. 42 U.S.C. § 405 (g).

The record supports the ALJ's step two determination plaintiff suffers mild psychological impairments, that is, impairments no more than mildly affecting her ability to perform work-like activities. The ALJ's credibility determination and weighing of the other evidence is based on substantial evidence and free of legal error.

**C. Hypothetical**

Plaintiff alleges the ALJ should have included in his hypothetical the more severe limitations assessed by Drs. Bot and Pollack (Ct. Rec. 15 at 18-19). As noted, the ALJ properly weighed the opinion and other evidence. His RFC is supported by the record and free of error.

CONCLUSION

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for the parties, **enter judgment in favor of Defendant**, and **CLOSE** the file.

DATED this 9th day of August, 2010.

s/ James P. Hutton
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE